1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   KATHRYN HAMILTON,                )   NO. EDCV 04-1118-MAN
                                      )
12              Plaintiff,            )
                                      )   MEMORANDUM OPINION
13        v.                          )
                                      )   AND ORDER
14   JO ANNE B. BARNHART,             )
     Commissioner of the             )
15   Social Security Administration,  )
                                      )
16              Defendant.            )
     _____)

17

18        Plaintiff filed a Complaint on September 13, 2004, seeking review
19   of the denial by the Social Security Commissioner ("Commissioner") of
20   supplemental security income benefits ("SSI"). 42 U.S.C. § 1383(c)(3).
21   On October 6, 2004, the parties filed a "Consent to Proceed Before a
22   United States Magistrate Judge," pursuant to 28 U.S.C. § 636(c).  The
23   parties filed a Joint Stipulation on August 3, 2005, in which:
24   Plaintiff seeks an order reversing the Commissioner's decision denying
25   benefits and either awarding benefits or remanding for further
26   appropriate proceedings; and Defendant requests that the Commissioner's
27   decision be affirmed.  The Court has taken the parties' Joint
28   Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed her current application for SSI on September 4, 2002. (Administrative Record ("A.R.") 66-72.)[1] Plaintiff claims to have been disabled since September 1, 1991, due to partial blindness, pelvic problems, low back problems, memory loss, and anxiety. (A.R. 14, 66.) She has past relevant work experience as a cook, janitor, and clothing tagger. (A.R. 14.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On March 31, 2004, Plaintiff, who was represented, appeared personally and testified at a hearing before Administrative Law Judge F. Keith Varni ("ALJ"). (A.R. 38-46.) On April 30, 2004, the ALJ denied Plaintiff's request for SSI, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 13-20, 3-5.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his April 30, 2004 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. (A.R. 20.) The ALJ further found that Plaintiff has one medically determinable impairment, hepatitis C, but

---

[1]   Plaintiff had filed prior applications for disability benefits in 1983 and 1989, which were denied at the initial level and not appealed. In addition, Plaintiff filed an application for disability benefits on October 31, 2000, which was denied by an administrative law judge on January 24, 2002. The Appeals Council subsequently denied Plaintiff's request for review of this decision, which Plaintiff did not appeal. (A.R. 13.)

that this impairment is not "severe." (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also*

3

<u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

DISCUSSION

Plaintiff alleges one issue in this action.  She contends that the ALJ erred in finding that she did not have a "severe" physical impairment of osteoarthritis.  (Joint Stip. at 3.)

**Because The Record Is Not Adequately Developed, Substantial Evidence Does Not Support The ALJ's Finding That Plaintiff Does Not Have A "Severe" Impairment Of Osteoarthritis**

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" <u>Smolen</u>, 80 F.3d at 1290 (citing Social Security Ruling 85-28 and <u>Yuckert v. Bowen</u>, 841 F.2d 303 (9th Cir. 1988)); *see also* 20 C.F.R. § 416.921 ("[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); <u>Bustamante v. Massanari</u>, 262 F.3d 949, 955-56 (9th Cir. 2001)(ALJ's finding that claimant's mental impairment was not severe was not supported by substantial evidence because every mental health professional who examined claimant found significant mental problems). The "severity" requirement is merely "a *de minimis* screening device to dispose of groundless claims." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158 (9th Cir. 2001)(citing <u>Smolen</u>, 80 F.3d at 1290).  "[A] claim may be

4

denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*." Social Security Ruling 85-28 (emphasis added).

Plaintiff contends that, in view of her treating doctors' records showing that they diagnosed and treated her for osteoarthritis on multiple occasions, the ALJ improperly found that she did not have a "severe" physical impairment. (Joint Stip. at 3.) Plaintiff further contends that the ALJ failed to fulfill his duty to develop the record by requesting treatment records from Loma Linda University Medical Center, in light of Plaintiff's treating records at Arrowhead Regional Medical Center noting that she also was receiving treatment at "Loma Linda." (Joint Stip. at 3-5.)

In dismissing Plaintiff's osteoarthritis as a "severe" impairment, the ALJ stated:

> There is mention of "arthritis" and "osteoarthritis" in the
> file, but there is not the slightest evidence of any
> arthritis, osteo or otherwise, and the record contains no x-
> ray evidence of any significant joint abnormalities, redness,
> or deformity (Exhibit B3F, pp. 7-10; Exhibit B6F, pp. 9-13;
> Exhibit B9F, pp. 18-19.) There is no credible evidence of any
> spasm, significantly limited range of motion in the spinal
> process or in any joint, and there is no evidence of
> neurological deficits (Exhibit B6F, pages 2, 4, and 6; Exhibit
> B9F, pages 14, 18 and 22). Laboratory test results show
> rheumatoid factor was negative (Exhibit B6F; page 13, Exhibit

B9F, page 28).   There is simply no evidence to support diagnoses of arthritis and I find this case is a good example of how diagnoses insinuate themselves into the record and once recorded are simply parroted by subsequent examiners.

(A.R. 15.)

In determining the "severity" of Plaintiff's claimed physical impairments, including her osteoarthritis, the ALJ relied upon the December 11, 2002 report of Dr. Adi Klein, an internal medicine physician who examined Plaintiff at the request of the Commissioner. (A.R. 16-17 -- ALJ's explanation of Dr. Klein's opinion and statement that it is "consistent with the current and prior medical evidence" and "is given great weight.")  In his opinion, Dr. Klein found as follows: as to Plaintiff's complaints of "back pain," "left shoulder pain," and "hypertension, there was "no objective evidence to establish diagnosis"; as to her "left pelvis fracture with residual of pain," there were no objective findings on examination"; as to her "hearing difficulty," Plaintiff "can hear normal conversation at normal distance"; and as to her "seeing difficulty, right eye stated subjective darker than left with some blurriness," "visual acuity [is] equal bilaterally" and there is "no diagnosis." (A.R. 125.)  Dr. Klein concluded that Plaintiff has no restrictions on lifting, carrying, standing, or walking.  (*Id*.) However, although Defendant maintains that the ALJ's findings are based on substantial evidence because Dr. Klein physically examined Plaintiff, Dr. Klein did not have the benefit of reviewing any of Plaintiff's treating records and he specifically noted that Plaintiff was a "poor historian."  (A.R. 121.)

6

It is well-established that the Commissioner has an affirmative duty to fully develop the record, even if the claimant is represented by counsel. *See* <u>Brown v. Heckler</u>, 713 F.2d 441, 442-43 (9th Cir. 1993); 20 C.F.R. §§ 404.1512(e), 416.912(e) (duty to re-contact treating physician); *see also* 20 C.F.R. §§ 404.1512a(b), 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity or insufficiency in the evidence). *See also* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 956-57, 959 (9th Cir. 2002) (requirement in 20 C.F.R. § 404.1512(e), that the Commissioner re-contact treating sources, is triggered where the information from the treating sources is inadequate to make a determination regarding disability).

Here, the record contains no indication that the Commissioner sought records from Loma Linda University Medical Center. Yet, Plaintiff identified "Loma Linda University" in her Disability Report as a medical institution from which she sought treatment during the period 1992 through 2001. (A.R. 77.) In addition, Dr. John Greer, one of Plaintiff's treating doctors at Westside Family Health Center at the Arrowhead Regional Medical Center, stated in a November 14, 2002 clinic note that Plaintiff had sought treatment at Loma Linda. (A.R. 190 -- Dr. Greer's record noting: "She has been treated by Loma Linda for her paresthesias [burning or tingling sensation], and a liver biopsy which she said was negative as she has not received any interferon or ribavirin.") These treating records directly bear on Plaintiff's physical impairments and may contain evidence of her osteoarthritis. The ALJ therefore erred by failing to seek them.

In addition, records from the Westside Family Health Center at the Arrowhead Regional Medical Center in San Bernardino consistently note osteoarthritis (or arthritis) diagnoses, complaints of pain, and treatment with narcotic pain reliever (Tylenol No. 3). (A.R. 183 -- Dr. Greer's February 26, 2003 clinic note diagnosing Plaintiff with osteoarthritis and fibromyalgia, prescribing Tylenol No. 3, and noting joint pain; 187-88 -- Dr. Kyle Smart's January 15, 2003 clinic note indicating that Plaintiff was seeking a refill of Tylenol No. 3 for her osteoarthritis; 190 -- Dr. Greer's November 14, 2002 clinic note diagnosing Plaintiff with osteoarthritis; 199 -- March 3, 2004 outpatient note diagnosing osteoarthritis and reflecting symptoms of pain in the left shoulder, left hip, and back; 200 -- January 22, 2004 progress note indicating osteoarthritis and "chronic pain"; 201 -- December 31, 2003 emergency room notes indicating osteoarthritis and joint pain; 210 -- September 11, 2003 outpatient note indicating that Plaintiff wanted a prescription for Tylenol No. 3 for "pain all over"; 211 -- August 4, 2003 outpatient note diagnosing and arthritis; 212 -- July 24, 2003 outpatient note indicating arthritis diagnosis and Tylenol No. 3 for pain; 213 -- July 7, 2003 outpatient note diagnosing arthralgia and noting "slow gait"; 217 -- November 23, 2003 emergency room note indicating left knee pain described as "chronic, intermittent, sharp [pain] causing weakness to leg, [no] swelling or new trauma. . . . x-rays last week [were] negative"; 219 -- April 23, 2003 emergency room record noting arthritis and indicating that Plaintiff was taking Tylenol No. 3 and Phenegran with codeine; 220 -- April 10, 2003 outpatient note indicating "[history of] osteoarthritis [and] fibromyalgia [causing] pain in [the] back and knees" and "using [Tylenol] No. 3.")   In light of these treating records reflecting

8

repetitive diagnoses of and treatment for osteoarthritis, the ALJ's statements -- that "there is not the slightest evidence of any arthritis, osteo or otherwise" and that Dr. Klein's opinion finding no such diagnosis is "consistent with the current and prior medical evidence" -- are inaccurate.

Yet, the ALJ's point is well-taken that the present record contains little objective testing to support the diagnosis of osteoarthritis, as no laboratory reports appear to reflect any positive signs of degenerative change. (*See* A.R. 134 -- February 11, 2001 knee x-ray showing "no acute abnormality"; 135 -- February 11, 2001 x-ray of the left hip showing "negative left hip"; 226 -- December 3, 2002 laboratory report noting "negative" rheumatoid factor screen.) Nevertheless, as noted above, the record must be developed by seeking Plaintiff's treating records from Loma Linda University Medical Center. In addition, as the ALJ has expressed his concerns about the bases of the diagnoses of osteoarthritis found by Plaintiff's treating physicians at the Arrowhead Regional Medical Center, the ALJ should further develop the record by seeking clarification as to the bases of their opinions. *See* Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry"); 20 C.F.R. § 404.1512(e)(treating source should be re-contacted in instances when the report from a claimant's medical source contains a conflict or ambiguity, does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques).

Therefore, especially in view of the *de minimis* standard for a finding of severity, the case must be remanded to develop the record by seeking records and additional clarification from Plaintiff's treating doctors regarding Plaintiff's osteoarthritis.  The ALJ should reassess Plaintiff's residual functional capacity after obtaining an opinion from a treating or examining physician or non-examining medical expert that is based on the full medical record.

Defendant contends that the ALJ correctly applied the presumption of continuing non-disability set forth in <u>Chavez v. Bowen</u>, 844 F.2d 691 (9th Cir. 1988).   In <u>Chavez</u>, the Ninth Circuit reasoned that the principles of *res judicata* apply to administrative proceedings, although less rigidly.  *Id.* at 692.  The court held that remand was appropriate when there were "changed circumstances" between the claimant's first administrative decision and the second administrative decision, namely the claimant's reaching advanced age status, which precluded the application of *res judicata*.  *Id.*  However, the first administrative law judge's findings regarding the claimant's residual functional capacity, education, and work experience were "entitled to some *res judicata* consideration in subsequent proceedings."  *Id.* at 694 (citing <u>Lyle v. Secretary of Health & Human Serv.</u>, 700 F.2d 566, 568 n.2 (9th Cir. 1983)).  *See also* Acquiescence Ruling 97-4(9)(explaining the difference between <u>Chavez</u> and social security policy that *res judicata* should not apply to a subsequent claim involving a period that was not adjudicated in the previous claim).

The ALJ noted that Plaintiff previously had filed several disability benefit applications, and had filed her last application

prior to the application at issue in this case on October 31, 2000. (A.R. 13.)   An ALJ denied that application in a January 24, 2002 decision; the Appeals Council denied review on April 22, 2002; and Plaintiff sought no further review of that decision.   (*Id*.)   The ALJ cited <u>Chavez</u> and reasoned that Plaintiff could not overcome the presumption of continuing non-disability arising from the January 24, 2002 decision, because Plaintiff "has failed to provide any new and material evidence to indicate a greater disability." (A.R. 13, 20.)

Because Plaintiff has alleged September 1, 1991 as her onset of disability in this case, *res judicata* applies to her claimed disability between October 31, 2000, if not some earlier date, and January 24, 2002, the date of the ALJ's decision denying Plaintiff benefits prior to the ALJ's decision in this case.   However, as the record must be developed in this case, such development might reveal "changed circumstances" showing that Plaintiff's claimed osteoarthritis has met the threshold for severity at some dtae after January 24, 2002.[2]   The ALJ should resolve this question on remand after developing and clarifying the record, as directed above.

---

[2]     To the extent that any of the records sought from Plaintiff's treating physicians on remand fall within a time period when *res judicata* applies, the ALJ nevertheless should consider such records to the extent that they shed light on Plaintiff's physical impairments outside the period when *res judicata* does apply. Medical evidence from outside the period of disability may be particularly relevant where the alleged impairment is unimproved and progressive in nature. *See* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 752 (9th Cir. 1989)(reports from 1983 and 1984 used to assess onset of claimant's disabling back impairment in 1985); *see also* <u>Blankenship v. Bowen</u>, 874 F.2d 1116, 1121 (6th Cir. 1989)(pre-onset diagnoses of mental disease considered because claimant's condition was progressive in nature).

**Remand Is Required**

Here, remand is appropriate to allow the ALJ the opportunity to correct the above errors. *See* <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 27, 2006.

                                        /s/
                                MARGARET A. NAGLE
                        UNITED STATES MAGISTRATE JUDGE

12